617 So.2d 215 (1993)
GRETNA REALTY COMPANY and Reagan Equipment Company,
v.
The HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY.
No. 92-CA-1078.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1993.
*216 Bruce A. Cranner, Blue, Williams & Buckley, Metairie, for defendant/appellant.
Scott R. Wheaton, Jr., Kristopher M. Redmann, Lugenbuhl, Burke, Wheaton, Peck & Rankin, New Orleans, for plaintiffs/appellees.
Before KLIEBERT, DUFRESNE and WICKER, JJ.
WICKER, Judge.
The Hartford Steam Boiler Inspection and Insurance Company, the defendant, appeals a judgment which ruled that its policy provided coverage for the damages suffered by the plaintiffs/appellees, Gretna Realty Company and Reagan Equipment Company. That judgment also awarded to Gretna Realty and Reagan Equipment the sum of $25,000.00 plus interest and costs. Gretna Realty and Reagan Equipment answer the appeal and ask for an award of penalties and attorney's fees. We modify and, as modified, affirm and remand.
Gretna Realty was the owner/lessor and Reagan Equipment the lessee of property in Belle Chase. During a freeze a water line on the roof of the building burst, damaging the property. Two insurance policies covered the building, those of Industrial Risk Insurers and Hartford. Industrial Risk paid the claim of $73,866.25 less its $25,000.00 deductible.
Hartford denied coverage; and Gretna Realty and Reagan Equipment sued it for the $25,000.00 deductible and penalties. The case was tried on the issues of an alleged policy exclusion and the calculation of liability.
Hartford's policy provides coverage for damage to "objects" occasioned by an accident. "Object" is defined as
any of the following equipment owned or leased by you or operated under your control:
(c) Any refrigerating or air conditioning system;
(d) Any piping and its accessory equipment.... *217 The policy excludes coverage for any water piping other than water piping forming part of a refrigerating or air conditioning system. The pipe that burst provides water to an air conditioning cooling tower for the purpose of cooling the refrigerant. It did not circulate through the cooling system, but its only purpose was to add water to replace that which was lost to evaporation. Hartford argued that this water piping was not part of the air conditioning system and refused to pay on this basis.
The judge visited the building and inspected the air conditioning system, concluding "that the water piping is an integral part of the air conditioning system and covered by the Hartford policy."

Coverage under the Policy
These are the relevant policy provisions:
We will pay for direct damage to Covered Property caused by a Covered Cause of Loss.
. . . .
A Covered Cause of Loss is an "accident" to an "object"....
. . . .
If Covered Property is damaged by water as a result of an "accident" to a covered refrigerating or air conditioning system, the most we will pay for this kind of damage, including salvage expense, is $25,000.
. . . .
"Accident" means a sudden and accidental breakdown of the "object" or a part of the "object."
. . . .
"Object" means any of the following equipment owned or leased by you or operated under your control:
. . . .
Any refrigerating or air conditioning system;
Any piping and its accessory equipment;
. . . .
However, "object" does not mean any:
. . . .
Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating;
. . . .
The other evidence consists of the depositions of two of Hartford's claim managers, Robert Whitestone and Eldred P. Gilmore, Jr., and the architect who designed the building, Larry Hammill Case.
Hartford's sole basis for denying coverage is its conclusion that the main feed line to the cooling tower was water piping which was not a part of the air conditioning system. It concedes that the cooling tower requires water to function but claims that the piping must be integral to the system. Under its interpretation, only piping which cools space, such as the piping which conducts the refrigerant, is covered. Piping which supplies water to cool the refrigerant in the cooling tower is not covered. Hartford stresses that its boiler and machinery coverage is very specialized and not meant to duplicate general property damage coverage such as Industrial Risk's policy. It argues that the cooling tower itself is a part of the system, but the water line isn't, since this water could possibly be supplied by hand with a hose or bucket.
Whitestone noted that another Hartford policy specifically excludes the source of water for the cooling tower, but this language was deleted from the policy at issue "to make it more understandable to the insured." He conceded that an unsophisticated person might be confused. Case testified that the water pipe serves the cooling tower exclusively and is part of the air conditioning system.
An interpretation of coverage under the policy is favored by law. Exclusions are read strictly in favor of the insured. Where more than one interpretation of an exclusion is reasonable, that affording coverage is adopted. Any limitation on coverage must be clear and express so as to inform the insured that it must take special measures to obtain other protection....
Rovira v. LaGoDa, Inc., 551 So.2d 790, 792 (La.App. 5th Cir.1989), writ denied 556 So.2d 36 (La.1990). We agree that the *218 policy covers the loss and affirm the judgment in this regard.

Extent of Liability
The policy provides:
We will first subtract the deductible amount [$250.00] shown in the Declarations from the amount we would otherwise pay [$25,000.00] as a result of direct damage to Covered Property arising from an "accident." We will then pay for the amount of direct damage in excess of the deductible up to the applicable Limit of Insurance.
. . . .
(1) You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this policy. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this policy bears to the Limits of Insurance of all insurance covering on the same basis.
(2) If there is other insurance covering the same loss or damage, other than that described in (1) above, we will pay only for the amount of covered loss or damage in excess of the amount due from the other insurance, whether you can collect on it or not.
. . . .
Hartford argues that, if this loss is covered, its liability is limited by the "other insurance" provisions of the policy. In his deposition Whitestone stated that paragraph (1) above was applicable since "[i]f it did not apply it would never apply." Hartford's calculations would result in a total liability for this $25,000.00 loss of $699.48 less the $250.00 deductible.
We believe, as the judge must have as well, that paragraph (1) is not applicable since the Industrial Risk policy was not "subject to the same plan, terms, conditions and provisions" as the instant policy: there are differences in coverage, limits, and deductibles. We do agree with Hartford that its deductible of $250.00 should be calculated into the judgment. We modify the judgment and, in the modified amount of $24,750.00, affirm it.

Penalties and Attorney's Fees
Gretna Realty and Reagan Equipment urge this court to impose penalties and attorney's fees. La.R.S. 22:658 imposes a duty to settle claims within thirty days of receiving satisfactory proofs of loss. If an insurer's failure to do so "is found to be arbitrary, capricious, or without probable cause", penalties and reasonable attorney's fees are mandatory. La.R.S. 22:1220 establishes a duty of good faith and fair dealing to the insured or the claimant. Failure to pay a claim within sixty days of proof of loss breaches that duty if that failure is "arbitrary, capricious, or without probable cause." This latter statute did not take effect until July 7, 1990; and the freeze which caused the loss was in December of 1989. We hold that R.S. 22:1220 is not retroactive and does not apply to this claim. See Tisdale v. State through Dept. of Transp., 581 So.2d 1045 (La.App. 1st Cir.1991), writ denied 588 So.2d 1121 (La. 1991); Premium Finance Co. v. Employers Reinsurance Corp., 761 F.Supp. 450 (W.D.La.1991).
The burden of proving entitlement to penalties and attorney's fees is on the party claiming them. Rogers v. Ambassador Ins. Co., 452 So.2d 261 (La.App. 5th Cir.1984) writ denied 457 So.2d 14 (La. 1985).
We find that Gretna Realty and Reagan Equipment have proved their entitlement to penalties and attorney's fees and that the judge erred in denying them. The risk of erroneous policy interpretation falls on the insurer, and the insured should not have to absorb the cost of litigating this issue. Carney v. American Fire & Indem. Co., 371 So.2d 815 (La.1979). Hartford's interpretation of its policy is a tortured one and consequently subjects it to the penalty provisions of La.R.S. 22:658: "ten percent damages on the total amount of the loss ... together with all reasonable attorney fees...."
The "loss" suffered by Gretna Realty and Reagan Equipment is $25,000.00 less the $250.00 deductible. Hartel v. Continental Ins. Co., 357 So.2d 55 (La.App. 4th *219 Cir.1978). We therefore increase the award by $2,475.00 in penalties and $1,500.00 in attorney's fees for the work on this appeal. We remand the case for a ruling on the amount of attorney's fees which are "reasonable" for the prosecution of this suit.
The judgment in favor of Gretna Realty Company and Reagan Equipment Company against The Hartford Steam Boiler Inspection and Insurance Company, $25,000.00 plus interest and costs, is modified as follows: it is reduced by the deductible amount of $250.00 and increased by $2,475.00 in penalties and $1,500.00 in attorney's fees for this appeal. The judgment as modified is affirmed, and the case is remanded for a hearing on attorney's fees for the trial court. The Hartford must pay the cost of this appeal.
MODIFIED AND, AS MODIFIED, AFFIRMED AND REMANDED.